NARREGANG, Respondent, v. NARREGANG, Appellant.

(139 N. W. 341.)

**Divorce—Gross Alimony—Remarriage—Relief From Unpaid Alimony —Discretion.**

Where the trial court allowed plaintiff a gross sum as alimony, but, on stipulation of the parties, granted on part of it an extension of time for payment, and plaintiff meanwhile, and before the unpaid portion of the alimony fell due under the extension of time, remarried a man abundantly able to support plaintiff in comfort and luxury, defendant having paid $17,000.00 of the $25,000.00 alimony, and asked to be relieved from paying more than $5000.00 of the unpaid $8000.00, the decree for alimony having appeared fair in the beginning, **held**, that the court did not abuse its discretion in denying defend-

ant's petition, under Civ. Code, Sec. 92, authorizing the court to modify its orders as to alimony, to be relieved from paying part of the balance due.

Smith and Corson, J. J., dissenting.

(Opinion filed Jan. 6, 1913.  Rehearing denied Feb. 13, 1913.)

Appeal from Circuit Court, Brown County. Hon. FRANK McNULTY, Judge.

Action by Helen Caystile Narregang against Spencer W. Narregang, for divorce and alimony.  From an order denying defendant's petition to be relieved from payment of part of the unpaid portion of the alimony, he appeals.  Affirmed.

C. M. Stilwill, for Appellant.

Under section 92, Civ. Code, this court seems to have held uniformly that it was intended thereby that all judgments for alimony were subject to such revision from time to time as the changed condition of the parties might require.   These matters may be presented to the court on motion or application, as was done in this case, and an appeal will lie from an order denying such relief.   Greenleaf v. Greenleaf, 6 S. D. 348; 61 N. W. 42; Harding v. Harding, 16 S. D. 406; 92 N. W. 1080.

In California, under the same provision of statute, it has been held that the court has authority to modify a decree so as to relieve a defendant from further payment of alimony, though the decree contains no reservation therefor.   Soule v. Soule, 87 Pac. (Cal.) 205.

And in the above case it is held that the court has jurisdiction to entertain the application of defendant notwithstanding his failure to appeal from the judgment.  Wallace v. Wallace, 67 Atl. (N. H.), 580.

"The court awarding a judgment for alimony, whether such alimony be payable in a gross amount or in installments, has authority to revise or modify such judgment upon application of either party for good cause shown."   Haskell v. Haskell, 132 N. W. (Minn.) 1129.

It seems to be the settled law and practice in the courts of all the states which have statutes similar to that above quoted that the courts retain general supervision and control over judgments for alimony; that that portion of divorce decrees is subject to revision from time to time, after the entry of judgment, as the

changed circumstances of the parties require, and that the rulings and orders of the trial courts on all such applications for modification are subject to review by the appellate courts.

It may be proper to discuss the question whether there is any distinction between a judgment for alimony fixing a lump sum which is required to be paid to a wife as alimony, and one where provision is made for the payment of a stated monthly or yearly allowance for her support:

The authority of the court to make provision for the wife is purely statutory, and is governed by Sections 89 to 93 inclusive of the Civil Code. Its foundation is the obligation of the husband to support his wife. The decree is merely the enforcement of that obligation in behalf of a wife, and the measure of the sum required is the need of the wife and the ability of the husband. Inasmuch as both the need and the ability to pay may fluctuate from time to time, according to the changes in circumstances of the parties, so the statute wisely provided that power be reserved in the court to make such revisions, on proper application, from time to time. Wallace v. Wallace, supra; 2 Bishop Mar. and Div., 429 et seq.; Cizek v. Cizek, 99 N. W. (Neb.) 28.

And I have been able to discover no authority, under similar provisions of statutes, which make a distinction between an allowance of alimony in gross and one where provision is made for payment at stated periods.

A gross sum by way of alimony is expressly held to be allowable, under the above statutory provision, in the following adjudicated cases: De Roche v. De Roche, 94 N. W. (N. D.), 767; Williams v. Williams, 6 S. D., 284; 61 N. W., 38; Robinson v. Robinson, 79 Cal., 511; 21 Pac. 1095.

And, as I read these authorities, no distinction is made as to the character of the decree between these allowances of gross sums and those wherein monthly or annual allowances are made.

There is a clear distinction between the case at bar, and that class of cases wherein the judgment in favor of the wife proceeds out of the division of property either originally belonging to the wife and brought by her into a common fund on assuming the marriage relation, or accumulated by their joint efforts during marriage. It requires but a moment's examination of the record

in this case to distinguish the same from the class of cases just referred to.

In such cases in the first place the pleading must set out the facts relied upon to confer jurisdiction upon the court to determine the respective rights of the parties in the specific property; the evidence must show the interest of the wife in such property— not as a wife, but the peculiar facts and circumstances by which she is entitled to claim any specific property standing in the name of the husband, or a share, as in the nature, of a partner in joint accumulations.    See Weber v. Weber, 17 Pac. (Or.) 866.

The record in this case discloses no such state of facts.    On the contrary it appears from the complaint that the respondent had no property; she asked in her complaint for "permanent alimony" for her support and maintenance; the court in its findings specifically found her to be entitled to such "alimony" for her support, and by the decree gave her $25,000.00 accordingly.    It is plainly the case of an allowance of a gross sum where the court with equal propriety might have provided for a monthly or yearly allowance for support, and should be governed by the same rules as if such latter provision had been made.

In the absence of a showing to the contrary, it is presumed that the allowance of alimony was not the joint earnings of husband and wife, nor on account of property of her own which came into the husband's hands.    Brandt v. Brandt, 67 Pac. (Ore.), 508.

The complaint, the findings of fact, conclusions of law, and the decree conclusively show that the award in this case was an allowance of alimony in its strict legal sense, and there is nothing in the record to sustain the theory that it was made by way of a division of property rights or anything of that sort; in fact, the court would not have been authorized to enter a decree of such character under the pleadings.

"Alimony" is defined in 1 "Words and Phrases," page 307, where many authorities are cited, as: "That allowance which is made to a woman on a decree of divorce, for her support out of the estate of her husband.    It is equivalent to the obligation implied in every marriage contract, that the husband shall furnish his wife a suitable support and maintenance."

Coming now to the second proposition, we believe the authorities are practically in accord, to the effect that on the subsequent remarriage of the wife, the husband should be free from further payment of alimony. See Stillman v. Stillman, 99 Ill., 196; 39 Am. Rep., 21; Wallace v. Wallace, supra; Comstock v. Comstock, 99 N. Y. S., 105-107; Kiraefy v. Kiraefy, 73 N. Y. S., 708; Casteel v. Casteel, 38 Ark., 477; Brandt v. Brandt, 67 Pac. (Ore), 508; Southworth v. Southworth, 168 Mass., 511; 47 N. E. 93; Cohen v. Cohen, 88 Pac. (Cal.) 267; 14 Cyc., at page 787.

In the instant case, it appears that the appellant made ample provision for the support of respondent up to the time of her remarriage; in fact, paid much more than it can reasonably be presumed her needs required. All payments had faithfully been made up to the time of her said remarriage, and no payments had accrued at the time of making the order of court appealed from. It is undisputed that her present husband is abundantly able to maintain and support her, and is now furnishing her with the necessities and comforts of life at Los Angeles, California, their present abode.

*Taubman & Williamson*, for Respondent.

This is an application to satisfy judgment for alimony granted to the plaintiff solely on account of her subsequent re-marriage. (Ab. fol. 39.)

The use of the word "alimony" herein refers to that which the court is authorized to grant under Sec. 92, Civil Code.

What is termed permanent alimony may be of two kinds:

1st. It may be in the nature of a division of the existing property of the defendant, or of the community property; or,

2nd. It may be a charge upon the future earnings of the husband.

In this case the alimony was of the first kind, being a division of the property of the husband. (Ab. fol. 5 and 17.)

We apprehend different rules prevail as to the two classes of alimony. The division of the property in this case was by way of a judgment in favor of the wife and against the husband, and we take it that such division would be as final as though the court had specified the particular articles of property that should have been delivered, or transferred, to the wife. Had a decree for a division of the property been entered it would have been treated

as final in case the specific articles and pieces of property were pointed out.

Also, alimony may be granted:

1st.   For future support of the wife;

2d.   As compensation for wrong;

3d.   As compensation for property brought by the wife to the husband; and

4th.   As compensation for her interest in community property.

There might be reason under the first head for the court considering the subsequent re-marriage as a reason for modifying the decree, but the subsequent remarriage would be no reason for modifying the decree when granted for the second, third or fourth reason above.

Each and every one of the cases cited by counsel in support of this application is a case coming under the first subdivision above, to-wit: A charge upon the future earnings of the husband, and also for the future support of the wife.   Under cases of this character if changed conditions were shown, the subsequent remarriage of the wife might be a potent reason for modifying the decree, considering the fact that her future support, by the second marriage, was provided for.   In itself, and of itself, the subsequent remarriage of the. wife is no ground for modifying the decree.

"As the statute providing for alimony does not provide that the wife shall forfeit the same by afterwards marrying again, the allowance of an anual sum for her support will not be affected by her subsequent remarriage and cannot be refused on that account." Shepard v. Shepard, 1 Hun, 240 affirmed, 58 N. Y. 644,

"And where the allowance proceeds from a consideration of the restitution of property brought to the husband by reason of the marriage, or the partition of property accumulations, it should be regarded as a final adjudication of the matter." Brant v. Brant, 67 Pac. 508; Cole v. Cole (Ill.), 19 L. R. A. 811; in re Spencer (Cal.), 23 Pac. 395.

"To justify the court in modifying its former judgment it should undoubtedly be satisfied that it is passing upon a different state of facts than those already adjudicated." Vert v. Vert, 3 S. D. 622.

In the case at bar all the circumstances were considered and the property divided at the time of the decree.   In the case of

Soule v. Soule, 87 Pac. 205, relied upon by the defendant in this action, the court expressly finds and holds that,

"In thus annulling a portion of the decree the court exceeded its jurisdiction. The decree which was rendered in 1896 was a determination of the rights of the parties and had become final."

The defendant in this case is asking that the decree be vacated.

It is true that a large discretion is reposed in the court, but "the conditions subject to change" influencing a modification of the decree are usually of a pecuniary character, affecting the ability of the husband to pay. 14 Cyc. 786.

In Cohen v. Cohen, 88 Pac. 267, the court specifically exempts from the rule, that the remarriage of the wife may be considered in an application to modify the decree, those cases coming under the second, third and fourth subdivisions.

And we submit that the farthest any court has ever gone in considering the remarriage as a reason for annulling or modifying the decree, is to hold that where the decree did not relate to conditions as they existed at the time of its entry but was a charge upon future earnings, it should have weight with the court in determining the question.

In the case at bar the decree related to the conditions as they then existed and divided the property very liberally in favor of the defendant, giving him two-thirds and the plaintiff only one-third.

Had the court in the decree designated certain property that should belong to the wife, would the court at this late date modify that decree by requiring the plaintiff on her remarriage to deed it back to defendant. Such a contention would be so absurd that a court would not consider it. Yet the present contention, when reduced to its elements, means the same thing.

It is elementary that the matter of modifying the decree is within the sound discretion of the court. Sec. 92, Civ. Code; Vert. v. Vert, 3 S. D. 622.

The court may, in granting the decree, have had many reasons for giving the amount awarded, none of which the remarriage would affect.

WHITING, J. This is a divorce action, and it was tried and decree entered therein in the year 1909. The said decree was in favor of the plaintiff, and, among other things, granted to her alimony in a gross or lump sum. The original decree made no provision for the payment of this alimony in installments, and it all became due at once; but, on stipulation of the parties thereafter entered into, the court granted an extension of time for the payment of part of the amount due, and, through certain other orders, the time of payment of a part of said alimony was further extended, so that in January, 1912, a part of said alimony still remained unpaid. At that time the defendant, having learned of the marriage of plaintiff to a third party, petitioned the court, asking that he be relieved from the payment of that part of the alimony then unpaid. The trial court denied this petition, and it is from the order denying such petition that this appeal is taken.

Section 92 of the Civil Code of this State provides: "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects." Appellant contends that, under the above section, a trial court has jurisdiction to, and should, modify a decree for alimony, whenever changed conditions render such modification equitable and just, and that this can be done, whether the decree to be modified was one granting support by way of monthly or periodical allowances, or whether it be one granting such support or alimony in a gross sum. Respondent contends that a decree allowing alimony in a gross sum is to be treated the same as any other money judgment, and will be subject to change only under the rules governing other money judgments. In the view which we take of this case it becomes unnecessary for us to determine this question.

While there are certain matters that must be taken into consideration by the court in granting any allowance for support, whether it be one of a gross sum or one payable in periodical installments, yet those matters which should be considered in determining the amount of an allowance in gross must of necessity

differ widely from those which should be considered in arriving at
a just periodical allowance.    In fixing a periodical allowance, the
court does so with no thought of the changes which the future
may bring about, knowing that, under the law, the decree may be
adjusted to meet the changed conditions, if there be changes.    The
court thinks only of the present conditions of the parties, and de-
termines what would be equitable and just if those conditions con-
tinue.    Thus, while the court would take into consideration the age
of the parties as it might bear upon their physical ability to supply
the needs of life, the court, in determining the amount of a con-
tinuing allowance, would not, for any purpose, take into considera-
tion either party's natural life expectancy, as it would be absolute-
ly immaterial in the determination of a just present allowance;
and, while the court would understand that, where the decree
granted an absolute divorce, either party might and possibly would
remarry, yet this fact would in no manner enter into the question
of the rightful amount of a periodical allowance.    When fixing the
amount which should be decreed in gross as an allowance for sup-
port, the court, expecting that the decree for alimony will be paid
before there will come any changed conditions, and expecting this
to be the final adjustment of the financial rights and obligations of
the parties, not only takes into consideration the present earning ca-
pacity of each party, but his or her probable future earning ca-
pacity.    It takes into consideration the probable duration of the life
of each, the chance of the remarriage of one or both parties, the
possibilities of sickness, and the fact that either or both, through
inheritance or other good fortune, may acquire a further estate.
After weighing all conditions, both existing and anticipatory, that
might properly be considered in arriving at the determination of
that sum of money which will be a fair adjustment of the rights
and obligations of the parties, the court determines the amount
which, as a gross allowance, would, under the circumstances, be
just and equitable, and, having decided that it would be in fur-
therance of public welfare and to the interest of the parties them-
selves so to do, it decrees a gross allowance.    It may chance that
the former wife or husband dies within a short period after decree
granted.    If so, it results in the amount decreed being in excess
of what would have been paid under any reasonable periodical al-
lowance.    It may happen, as in the case at bar, that the former

wife remarries, and, through such remarriage, obtains support, such as, in case the decree had made a periodical allowance, would justify the trial court in terminating such allowance. Thus again, if a decree fixing an allowance in gross has been granted, it may result in the former wife receiving much more than she would have received under a periodical allowance. There can be no difference in principle between a case where there is a remarriage than where there is an untimely death, unless the fact that there was to be a remarriage was known to the wife prior to the divorce. Upon the other hand, neither party may remarry, and both may live out a span of life far in excess of that to be anticipated under the tables of mortality. The former wife may become sick or otherwise physically unable to care for herself, or the husband may become possessed of great wealth. Under such circumstances a decree of a gross allowance for support would prove to the financial advantage of the former husband.

It certainly tends to the promotion of the public welfare, and usually to the welfare of the parties to a divorce action, if the decree that grants an absolute divorce also terminates all relations and duties of a financial nature existing between the parties, and it is this fact that justifies such a decree. If it were not expected that there would be a final termination of the rights and obligations of the parties, so far as the support of the wife is concerned, we doubt if any court would ever grant a gross allowance. The parties to this action must have considered that the decree was justified by the facts proven, and by the other matters, anticipatory in nature, of which the trial court would take cognizance; otherwise, there would have been an appeal. Nothing has occurred that could not have been anticipated by the trial court, and therefore considered by him in rendering the decree, and surely the judge who granted the decree, who is the judge of whom the modification was sought knew what he took into consideration when granting the decree. The decree was in all things fair and just, and the alimony therein fixed would have been paid long before respondent's remarriage, had its payment not been stayed at appellant's request. Conceding that it was within the discretion of the trial court to modify the allowance which it had made, though it was in a gross sum, there was no abuse of discretion in its refusal so to do.

The order of the trial court is affirmed.

SMITH, J. (dissenting). I am unable to concur in the conclusion announced in this case. I am persuaded that, under the provisions of section 92 of the Civil Code, the trial court was authorized to modify its order in the matter of allowance to the divorced wife for support during her life, or for a shorter period, whenever the circumstances of the case have so changed as to render the continuation of support by the divorced husband inappropriate and unnecessary. In the case at bar the trial court awarded the plaintiff the sum of $25,000 for her support, without any condition as to the time of payment. Thereafter the time of payment was modified, upon a stipulation of counsel of plaintiff and defendant, by an order of the trial court so as to require payment of $5,000 upon the entry of judgment, $5,000 on September 1, 1910, and the remaining $15,000 on December 1, 1910. Under this modified order, $10,000 was paid, and thereafter, on November 4, 1910, on a hearing by stipulation, upon motion of defendant, to further modify the order, the time of payment of the remaining $15,000 was extended to the 1st day of June, 1911. Under this modified order, the sum of $5,000 was paid plaintiff, and thereafter, on notice and further hearing, the court modified the last order, so as to require the remaining allowance of $10,000 to be paid as follows: The sum of $2,000 on or before the 1st day of December, 1911, $3,000 on or before the 1st day of June, 1912, and the remaining $5,000 on or before December 1, 1912. Under this order, $2,000 due December 1, 1911, was paid, leaving unpaid the sum of $3,000 due June 1, 1912, and the sum of $5,000 due, December 1, 1912. Under these various orders, between the 23d day of May, 1910, and the 11th day of October, 1911, the plaintiff was paid the sum of $17,000 for support, and defendant does not ask to be relieved from payment of the $3,000 due June 1, 1912.

On the 18th day of November, 1911, in the city of San Francisco, state of California, plaintiff, Helen Caystile Narregang, was married to one Allen Vining Duncan, and in all respects has been since that time properly and abundantly cared for and supported by him as his wife. It is undisputed that Duncan is a member of a firm engaged in extensive business enterprises, owns a large amount of real property, and has other investments in the vicinity of Los Angeles, is in receipt of an annual income of $10,000 or

more, and is abundantly able to support the plaintiff in comfort and luxury. It is undisputed that, at the time plaintiff and defendant were married plaintiff was 22 years of age, and defendant 39 years of age; that there were no children, the issue of the marriage; that defendant is now 50 years of age. The defendant, Spencer W. Narregang made an application to the trial court, upon a showing embracing these facts, on the 9th day of February, 1912, for an order relieving him from payment of the $5,000 on December 1, 1912. On May 11, 1912, the trial court denied the application. The appeal is from this order.

The single question discussed and determined by the majority opinion is the propriety of the order refusing to relieve defendant from payment of the last $5,000 of support money on the 1st day of December, 1912. The plaintiff remarried about a year and a half after her divorce, and during that time, under the allowance made by the trial court, has received substantially $20,000 for support from defendant. He asked to be relieved from payment of the balance of $5,000 of the allowance not then due. This relief was refused by the trial court, and the refusal is approved by the majority opinion, on the ground that the trial court, was within its discretionary power. The divorced wife was without children, and it is not claimed or suggested that at the time of her marriage to defendant she was the owner of, or brought into the common fund, a single dollar, or any property whatever, or that by her industry or efforts she ever added a dollar to the accumulations of the husband. Notwithstanding these facts, the trial court allowed her, and she has been paid inside of a year and a half, $20,000 of support money by her former husband. She is now the wife of a man amply able and willing to support her in comfort and luxury. Under such conditions, it appears to me nothing short of an abuse of discretion to refuse to relieve the former husband from payment of any further allowance for support. I venture the statement that no case can be found in any court of any state, having statutes similar to our own, in which such relief has been denied under conditions such as are disclosed in this record. Universally the courts recognize the remarriage of the wife, and the right to support thus acquired, as a proper ground for relief of the former husband from the duty of support.

A review of the cases would extend the discussion beyond the limits I care to go in this case, and I shall merely cite some of the decisions recognizing the rule which, in my judgment, should be applied in this case. It is stated in 14 Cyc. 787, (D), as follows: "Where a wife has obtained an absolute divorce, carrying with it the privilege of remarriage, and permanent alimony is decreed to her, it is generally held that the husband, upon her subsequent remarriage, may secure an order vacating the decree as to alimony." It is true certain courts have held that a divorced wife, who has married again, may receive support, by the sanction of judicial order, from both her former and present husbands; but in my judgment the weight of authority, and the sounder reasoning from the accepted standards of civilized society are against such conditions.

In the case of Stillman v. Stillman, 99 Ill. 196, 39 Am. Rep. 21, the court says: "It would be difficult to suggest or conceive any cause that would present grounds more 'reasonable and proper' for suspending further payment of alimony than the subsequent marriage of the divorced wife. The impression made by the doctrine of common law, that by marriage husband and wife are one person in law, has not been entirely removed from the mind by modern legislation. The obligation implied in the marital relation resting on the husband to support his wife remains, having all the binding efficacy it had at common law. Courts of equity will be slow to change that obligation in any case from the husband to another man, although he may once have been the husband of the wife. Aside from its positive unseemliness, such a policy finds no support in any equitable consideration. Treating alimony as may be done, as the equivalent for that obligation of support which arises in favor of the wife out of the marriage contract, and which is lost when that contract is annulled by the decree, she obtains the same obligation for support by second marriage. It is unreasonable that she should have the equivalent of an obligation for support by the way of alimony from a former husband, and an obligation from a present husband for an adequate support, at the same time. It is illogical, as well as unreasonable. It is her privilege to abandon the provision the decree of the court made for her support under the sanction of the law for another provision for maintenance which she would obtain by a second marriage,

and when she has done so the law will require her to abide her election."

    The following decisions sustain this view: Cohen v. Cohen, 150 Cal. 99, 88 Pac. 267, 11 Ann. Cas. 520, and notes; Casteel v. Casteel, 38 Ark. 477; Morgan v. Lowman, 80 Ill. App. 557; Southworth v. Treadwell, 168 Mass. 511, 47 N. E. 93; Bankston v. Bankston, 27 Miss. 692; Olney v. Watts, 43 Ohio St. 499, 3 N. E. 354; Brandt v. Brandt, 40 Or. 477, 67 Pac. 508; King v. King, 38 Ohio St. 370; Brown v. Brown, 38 Ark. 324; Franck v. Franck, 107 Ky. 362, 54 S. W. 195; Kiralfy v. Kiralfy, 36 Misc. Rep. 407, 73 N. Y. Supp. 708; Comstock v. Comstock, 49 Misc. Rep. 599, 99 N. Y. Supp. 1057; Wetmore v. Wetmore, 162 N. Y. 503, 56 N. E. 997, 48 L. R. A. 666. In Cohen v. Cohen, supra, the Supreme Court of California, construing a statute precisely like our own, said: "The Code expressly gives the court power to modify from time to time its orders respecting permanent alimony. Civil Code Cal. § 139. The judgment in the first instance might have been made for a gross sum or for periodical payments, either for a stated period, or, as in effect was done, during the life of the plaintiff."

    The order of the trial court should have been reversed.

    CORSON, J., concurs in the dissenting opinion of SMITH, J.