2011 Ark. App. 753
**Betty BASS, Appellant**

v.

**R.C. Keith BASS, Appellee.**

**No. CA 11–243.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Sherry D. Burnett, Malvern, Brett David Watson, Searcy, for appellant.

Sandra Tucker Partridge, Benton, for appellee.

RITA W. GRUBER, Judge.

This case arises from two orders of the Hot Spring County Circuit Court: a divorce decree and an order finding appellant Betty Bass in contempt for willfully withholding visitation from appellee Keith Bass. Appellant's first point on appeal is that the trial court clearly erred in the amount of child support awarded because the court did not comply with the dictates of Administrative Order Number 10— Child Support Guidelines, improperly reduced appellee's obligation for child support due to the special-needs adoption subsidy the children receive, and improperly reduced appellee's obligation for child support due to Social Security survivor benefits received by one of the children. In her second point on appeal, appellant contends that the court erred by finding her in contempt. We affirm the court's order finding appellant in contempt, as modified herein, but, because the trial court failed to follow the procedures set forth in Administrative Order Number 10, we reverse and remand its order awarding child support for the court to make additional findings consistent with our opinion.

The parties were divorced by decree entered on October 6, 2010. During their marriage, the parties adopted two special-needs boys, A.B. and C.B., out of foster care. At the time of the divorce hearing, A.B. was eleven years old, but he functioned at the level of a seven year old. C.B. was chronologically ten years old, but developmentally about five years old. Both boys had been physically or sexually abused before being placed in foster care,

and both require significant assistance in their academic and home environments. C.B. requires a one-on-one aide to attend school, which he does for parts of some days. Testimony from appellant, the boys' counselor, and C.B.'s one-on-one aide indicated that appellant is required to come to school several times each week for several hours to calm C.B. when he has outbursts or to take him or A.B. home if they are unable, because of their deficiencies, to participate in school. Because of the constant care the boys require, appellant testified that she is unable to maintain employment.

The court awarded custody to appellant with reasonable visitation to appellee, which included alternate weekends, alternate holidays, and two weeks during each month of summer. The court found that appellee's net income was $2758 per month from his employment and that appellant's net income was $1743, which included a social security ⌊₃check for A.B. that was a death benefit from A.B.'s biological father in the amount of $428 [1] and an adoption subsidy paid by the state in the amount of $1315 for both children.[2] Without setting forth the amount of child support required by the Family Support Chart, the court then listed the relevant factors set forth in Section (V) of Administrative Order No. 10 and found that appellant would require an additional $300 per month income to meet the children's needs. The court determined that "the best way to accomplish this is to grant $150.00 per month in child support to [appellant] and $150.00 per month in alimony to [her]."

## I. Child Support

■ For her first point on appeal, appellant contends that the trial court clearly erred in its award of child support. Specifically, appellant contends that the court failed to state the amount of child support required by the chart, failed to explain why the chart amount was unjust or inappropriate, and improperly reduced appellee's support obligation because of the adoption subsidy and survivor benefits received by the children. We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Stevenson v. Stevenson*, 2011 Ark. App. 552, at 3, 2011 WL 4388282. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* However, we give a trial court's conclusions of law no deference on appeal. ⌊₄*Id.*

Administrative Order Number 10 includes a family support chart indicating the amount of support due depending upon the payor's income. A trial court's order awarding child support must recite the amount of support required by the chart and recite whether the court deviated from that amount. Ark. Sup.Ct. Admin. Order No. 10(I) (2011). It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Id.; Black v. Black*, 306 Ark. 209, 214, 812 S.W.2d 480, 482 (1991). If the court deviates from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interests of the child, the chart

---

1. While the parties refer to this as an SSI death benefit, we assume the benefit is a survivor benefit from social security rather than a benefit for supplemental security income.

2. An adoption subsidy is provided to children with special needs who are adopted from the Arkansas Department of Human Services. *See* Ark.Code Ann. §§ 9–9–401 to –412 (Repl. 2009 & Supp.2011) (Arkansas Subsidized Adoption Act).

amount is unjust or inappropriate. Ark. Sup.Ct. Admin. Order No. 10(I).

In this case, the court's order does not state the amount of support required by the chart, nor does the order include specific written findings explaining why that amount is unjust or inappropriate after considering all of the relevant factors, including the best interests of A.B. and C.B. While the court does list all of the factors set forth in Section (V) of Administrative Order Number 10 that may be considered by the court in determining the appropriate amount of child support, the court does not explain how any of these factors apply in this case to justify deviating from the chart amount, which is presumed to be appropriate. The parties agree that the chart amount for appellee's income is $695 per month (or $319 every two weeks). Without mentioning this amount or making any specific findings to explain its deviation, the court awarded $150 per month, almost 80% less than the chart amount, to A.B. and C.B., both indisputably special-needs children.

Although the court found that appellant's net income was $1743 per month, testimony at trial showed that appellant was unemployed. The evidence established that she received monthly checks of $1315 from the state as an adoption subsidy for the children and $428 to A.B. for survivor benefits. While the court did not make specific written findings explaining its decision, it appears that the court offset appellee's obligation to pay child support because of these amounts. On remand, the court may consider the adoption subsidy but should be mindful that these are benefits provided by the state because these are special-needs children. Testimony established that both children were extremely developmentally and functionally challenged and in need of significant special attention, both at home and at school. Further, we note that a parent has a legal and moral duty to support and educate his child and to provide the necessities of life even though the child has sufficient property to do so. *Lee v. Lee*, 95 Ark.App. 69, 75, 233 S.W.3d 698, 702 (2006) (citing *Alcorn v. Alcorn*, 183 Ark. 342, 35 S.W.2d 1027 (1931)). Neither the adoption subsidy nor the survivor benefit was earned by appellee and neither may be considered a substitute for his obligation to support his children. While the court may consider these amounts under the provision regarding other "income or assets available to support the child," Ark. Sup.Ct. Admin. Order No. 10(V)(a)(12), it should recognize in doing so that this income was provided by the government on behalf of these special-needs children, whose needs are greater than those in an ordinary child-support case. Finally, and of utmost importance in this case, in considering deviation from the chart amount, the court must consider the best interests of these children.

For the foregoing reasons, we reverse and remand to the trial court for a determination of child support in accordance with Administrative Order Number 10.

## II. *Contempt*

For her second point on appeal, appellant contends that the trial court erred in finding her in contempt of its April 14, 2010, order for willfully withholding visitation from appellee. Specifically, she argues that the court violated her right to due process because it failed to notify her that it was considering criminal contempt; that the order she was found to have violated was not definite in its terms and clear as to the duties it imposed; that the evidence did not support the court's contempt order; and that the court improperly imposed an indefinite suspended sentence.

Contempt may be established when the offending party willfully disobeyed a valid order of a court. *Kilman v. Kennard,* 2011 Ark. App. 454, at 7, 384 S.W.3d 647, 651–52. Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id.* In this case, the court did not state whether it found appellant in criminal or civil contempt. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Criminal contempt punishes while civil contempt coerces. *Baggett v. State,* 15 Ark.App. 113, 116, 690 S.W.2d 362, 364 (1985). Therefore, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State,* 296 Ark. 137, 139, 752 S.W.2d 275, 276 (1988).

In this case, the motion for contempt asked the court to punish appellant for her willful failure to abide by the court's visitation schedule. In its order finding appellant in contempt, the court sentenced appellant to twenty days in jail. The court then required appellant to serve only two days of that sentence and suspended the remaining eighteen days on the condition that she violate no orders of the court. The court punished appellant, offering her no opportunity to purge the contempt. *See generally Applegate v. Applegate,* 101 Ark.App. 289, 275 S.W.3d 682 (2008). Therefore, we conclude that the court found her in criminal contempt. Our standard of review for criminal contempt is whether the decision is supported by substantial evidence, viewing the record in the light most favorable to the trial court's

decision. *Kilman,* 2011 Ark. App. 454, at 8, 384 S.W.3d at 652.

Appellant first argues that the court denied her due process because it failed to notify her that it was considering holding her in criminal contempt. Appellant failed to make this argument in the trial court. Thus, it is not preserved for our review on appeal. *Rhodes v. State,* 2011 Ark. 146, 2011 WL 1320182. In any case, the body of appellee's motion for contempt specifically requested that the court punish appellant for her willful violation of the court's order and, in his prayer for relief, he asked that appellant be "punished accordingly including jail time" if the court found it to be appropriate.

Appellant also claims that the order she was found to have violated was not definite in its terms and clear as to the duties it imposed. We disagree. The order specifically stated that appellee was entitled to visitation and set forth precise visitation days and times: every other weekend; holidays on either the even or odd year, depending upon the specific holiday; and specifically designated weeks in June, July, and August. The order also specifically set forth that the exchanges were to occur at the Sheriff's Department Annex on Highland Street, Malvern, Arkansas.

Appellant's next argument is that the evidence did not support the court's contempt order. Appellant attempts to explain why she withheld visitation from appellee, but she does not deny that she in fact did intentionally withhold visitation from appellee. She alleged in the trial court and she argues here that she withheld visitation because appellee abused the children. She contends that the evidence supported her allegations of abuse against appellee in spite of all of these numerous allegations (over twenty) having been un-

substantiated. The court did not believe her, and matters of credibility are for the fact-finder. *Arendall v. State*, 2010 Ark. App. 358, 377 S.W.3d 404. Viewing the record in the light most favorable to the trial court's decision, we hold that substantial evidence supports the court's determination that appellant willfully violated the court's visitation order.

 Finally, appellant argues that the court improperly imposed an indefinite suspended sentence. We agree. A trial court cannot indefinitely suspend a contempt sentence. *Henry v. Eberhard*, 309 Ark. 336, 341–42, 832 S.W.2d 467, 470 (1992). This improper sentence does not, however, abrogate the finding of contempt or the part of the sentence that was properly imposed. *Id.* at 342, 832 S.W.2d at 470. Therefore, we modify the court's sentence to the time already served.

Accordingly, we affirm the court's order of contempt as modified to limit the sentence to the time already served, and we reverse and remand the court's order setting child support for the trial court to make a determination in accordance with Administrative Order Number 10 and consistent with this decision.

Affirmed as modified in part; reversed and remanded in part.

VAUGHT, C.J., and PITTMAN, J., agree.